J-S08017-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID M. KING, | |
| Appellant | No. 789 WDA 2017 |

Appeal from the Judgment of Sentence entered May 1, 2017,
in the Court of Common Pleas of Cambria County,
Criminal Division, at No(s): CP-11-CR-0000233-2015.

BEFORE:  LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.*

MEMORANDUM BY KUNSELMAN, J.:                    FILED APRIL 5, 2018

David M. King appeals from the judgment of sentence imposed after a jury convicted him of multiple sex crimes.  After careful review, we affirm.

The pertinent facts and procedural history are as follows.  On December 29, 2014, the Commonwealth charged King with 58 crimes arising out of illegal sex acts that he allegedly perpetrated upon his minor son over a period of ten years.  Prior to trial, King filed multiple motions, including a motion for a psychological examination of the victim, a motion in limine to exclude his prior bad acts, and a motion for a change of venue.  The trial court denied the first, denied the second as premature, and denied the third without prejudice to King's ability to re-raise it during jury selection.

The trial court denied the Commonwealth's attempt to supplement its expert's report on the eve of trial, and after the parties had already selected

_____
*Former Justice specially assigned to the Superior Court.

a jury. The Commonwealth filed an interlocutory appeal to this Court, in which it certified that the trial court's denial of the motion substantially handicapped its ability to prosecute King. In an unpublished memorandum filed on December 13, 2016, this Court affirmed the trial court's order. Commonwealth v. D.K., No. 1661 WDA 2015 (Pa. Super. 2016).

At the conclusion of a two-day trial on February 7, 2017, the jury convicted King of 54 of the 58 charges. On May 1, 2017, the trial court imposed an aggregate sentence of 55 to 110 years in prison. This timely appeal follows the denial of King's post-sentence motion. Both King and the trial court have complied with Pa.R.A.P. 1925.

King raises the following issues on appeal:

I. Whether the Trial Court erred in entering an illegal and unconstitutional mandatory sentence against [King] in light of the holding in Alleyne v. United States[, 133 S.Ct. 2151 (2013)]?

II. Whether the Trial Court erred in denying [King's] post-sentence motion that [his] conviction was against the sufficiency of the evidence?

III. Whether the Trial Court erred in denying [King's] post-sentence motion seeking a new trial on the basis the court erred in permitting the prejudicial testimony of [his] former paramour, in denying [his] request for a change of venue, and for denying [his] request for a mental health evaluation of the alleged victim?

IV. Whether the Trial Court erred in denying [King's] post-sentence motion requesting a dismissal of his charges per [Pa.R.Crim.P.] 600(a)(2)(a)?

King's Brief at 8.

- 2 -

Because, if meritorious, Appellant's sufficiency challenge would result in discharge, we consider it first. Commonwealth v. Toritto, 67 A.3d 29, 33 (Pa. Super. 2013) (en banc). Our standard of review is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable a fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Hansley, 24 A.3d 410, 416 (Pa. Super. 2011) (citations omitted). "In evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we are required to consider all the evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." Commonwealth v. Gray, 867 A.2d 560, 567 (Pa. Super. 2005) (citation omitted).

In support of his sufficiency challenge, King does not challenge any particular element of any crime of which the jury convicted him. Rather, he argues the following as to all of the offenses:

> The Commonwealth failed to present any eye-witnesses to the alleged crimes but for the [victim] himself whose testimony was suspect; the Commonwealth failed to present DNA evidence or medical evidence (but for a medical report indicating that the [victim] had a scar on his back side, yet there was no conclusion as to what caused said scar; the [victim] testified that despite the alleged sexual assaults perpetuated upon him by [King], that he still returned to [King's] residence after informing his mother of the alleged sexual assaults. [King] respectively avers that the above-particulars caused him to have an unfair trial in violation of his [c]onstitutional rights under both the Pennsylvania and United States Constitutions.

King's Brief at 18-19.

The trial court found no merit to Appellant's sufficiency challenge:

> Regarding the legal sufficiency of the Commonwealth's evidence, the Court determined that the evidence of record supported the charges, and accordingly, allowed all of the charges to go to the jury for deliberation. [King] is now critical of the Commonwealth's failure to present any eye-witnesses; however, we believe that the record, as discussed above, indicates the contrary, given both the extensive testimony of [the victim], as well as Ms. Stuller's observations of [the victim] and [King] naked together in the small shower and in bed. [King] also asserts the absence of DNA or medical evidence; however, the Commonwealth noted the lack of DNA evidence at trial given [the victim's] delay in disclosure. Relative to the alleged absence of medical evidence, we believe that [King] is simply incorrect, as the Commonwealth presented Dr. Kupchella's report, which describes [the victim's] anal scarring.

Trial Court Opinion, 6/1/17, at 9. The trial court further noted that King's allegation regarding the victim's decision to return to King's residence after informing his mother of the alleged sexual abuse questions the weight accorded the vicitm's testimony rather than its sufficiency. See id. at 10.

Our review of the record supports the trial court's conclusions. Initially, it is well settled that the testimony of the victim of a sex offense, if believed by the fact finder, is sufficient to support the convictions. Commonwealth v. Jette, 818 A.2d 533, 534 (Pa. Super. 2003); 18 Pa.C.S.A. § 3106 (providing "[t]he testimony of a complainant need not be corroborated in prosecutions under this chapter"). "[M]edical evidence is not required if the fact finder believes the victim." Jette, 818 A.2d at 534. As noted above, the jury, as fact finder, was free to believe all, part or none of the victim's testimony. Hansley, supra. Given the guilty verdicts, the jury chose to believe the victim. Thus, King's sufficiency challenge fails.

King next claims that the aggregate sentenced imposed by the trial court included an illegal 25-year mandatory sentence, pursuant to 42 Pa.C.S.A. § 9718.2(a)(1), in violation of Alleyne v. United States, 133 S.Ct. 2151 (2013), and the Pennsylvania Supreme Court's decision in Commonwealth v. Wolfe, 140 A.3d 651 (Pa. 2016). We disagree.

Subsection 9718.2(a)(1) reads, in pertinent part, as follows:

> Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and the tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set

> forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or statute to the contrary.

42 Pa.C.S.A. § 9718.2(a)(1).

King does not dispute that he was previously convicted of a qualifying offense under this statute. Instead, he argues that subsection 9718.2(a)(1) is unconstitutional pursuant to Alleyne, supra, and Wolfe, supra.[1]

In Alleyne, the United States Supreme Court "held that any fact that, by law, increases the penalty for a crime must be treated as an element of the offense, submitted to a jury rather than a judge, and found beyond a reasonable doubt." Wolfe, 140 A.3d at 653 (citing Alleyne, 133 S.Ct. at 2163)). However, as this Court has explained, "Prior convictions are the remaining exception to Apprendi v. New Jersey, 530 U.S. 466 [(2000)] and Alleyne, [supra,] insofar as a fact-finder is not required to determine disputed convictions beyond a reasonable doubt to comport with the Sixth Amendment jury trial right." Commonwealth v. Hale, 85 A.3d 570, 585 n.13 (Pa. Super. 2014).

_____

[1] We note that King also improperly cites to our unpublished memorandum in Commonwealth v. Elia, 2016 WL 2908553 (Pa. Super. 2016), in violation Superior Court Internal Operating Procedure (IOP) § 65.37(A). See 210 Pa.Code. §65.37.

Here, the mandatory minimum sentence the trial court imposed on King was based upon King's prior conviction for possession of child pornography. Thus, the Alleyne decision does not render it illegal. Moreover, King's reliance on Wolfe, supra, is inapposite because that case did not involve the imposition of a mandatory minimum based on a prior conviction. King's illegal sentence claim is without merit.

In his next issue, King argues three instances in which the trial court erred in failing to grant him a new trial. He first claims that the trial court erred in admitting the testimony of Ms. Stuller, a former paramour with whom he and the then three-year-old victim lived for approximately nine years. As noted above, King filed a motion in limine to exclude her testimony as "prior bad acts" evidence under Pennsylvania Rule of Evidence 404(b). According to King, any probative value of Ms. Stuller's testimony was outweighed by the highly prejudicial effect that testimony would have on the jury.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." Commonwealth v. Drumheller, 808 A.2d 893, 904 (Pa. 2002). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." Commonwealth v. Harris, 884 A.2d 920, 924 (Pa. Super. 2005).

The admissibility of prior bad acts of a defendant is governed by Pennsylvania Rule of Evidence 404(b), which reads as follows:

> Rule 404.  Character Evidence; Crimes or Other Acts
>
> \* \* \*
>
>    (b)   Crimes, Wrongs, or Other Acts.
>
>    (1)   Prohibited uses.  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
>    (2)    Permitted Uses.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).  "[E]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes."  Commonwealth v. Melendez-Rodriguez, 856 A.2d 1278, 1283 (Pa. Super. 2004) (en banc).

Our review of the record supports the Commonwealth's claim that King has waived this issue.  "[A] motion in limine may preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion."  Commonwealth v. McGriff, 160 A.3d 863, 866 (Pa. Super. 2017).  However, "if the trial court defers ruling on a motion in limine until trial, the party that brought the motion must renew the objection at trial or the issue will be deemed waived

on appeal." Blumer v. Ford Motor Company, 20 A.3d 1222, 1232 (Pa. Super. 2011 (citations omitted).

Here, the trial court deferred ruling on King's motion in limine to exclude Ms. Stuller's testimony pursuant to Pa.R.E. 404(b). See Order, 9/4/15, at 3. A review of the pertinent trial transcript reveals that King did not renew his objection at trial. See N.T., 2/6/17, at 4-26, 115-29. Thus, this issue is waived. Blumer, supra.

Nevertheless, it is clear from our review of the record that the testimony presented by Ms. Stuller did not constitute "prior bad acts" perpetrated by King, but rather was corroborative evidence of the charges for which King was currently on trial. The fact that Ms. Stuller did not actually witness any sexual behavior between King and the victim involves the weight of the evidence rather than its admissibility. Thus, absent waiver, King's first basis for a new trial is meritless.

As a second basis for a new trial, King claims that the trial court erred in denying his pre-trial motion for a change of venue "due to the extensive publicity of the alleged crime, and the inability of [King] to find an unbiased jury that was not tainted by the news coverage of the case." King's Brief at 24. Our review of the record supports the trial court's conclusion that King has waived this challenge. The trial court explained:

> [W]e dismissed [King's] Motion for Change of Venue without prejudice, noting our practice to first attempt to pick a jury. We also indicated that should it become apparent during jury selection that the jury pool has been exposed to and adversely affected by media publicity in

- 9 -

> this case, [King] can renew this Motion. However, Jury Selection was conducted by this Court on February 2, 2017, and a renewed Motion was never forthcoming. Nonetheless, any juror who indicated a prejudice against [King] during voir dire based upon either information obtained from media coverage or person experience was stricken for cause.

Trial Court Opinion, 6/1/17, at 11 (citations omitted). Thus, because King did not renew his challenge during jury selection, it is waived, and we need not address it further.[2]

As a third basis for new trial, King asserts that the trial court erred in denying his pre-trial motion for a "mental health evaluation of the victim to determine his competency to testify at trial." King's Brief at 25. The trial court denied the motion because King "did not demonstrate a substantial need for same." Trial Court Opinion, 6/1/17, at 11. King disagrees, with the trial court's conclusion, and argues:

> [King] submits that there was compelling evidence to warrant a psychiatric evaluation of the [victim] in this case. Throughout these proceedings, [King] emphasized his innocence in regards to the many charges against him, and notes that there was no scientific evidence or eye witnesses to the alleged criminal acts of such a serious sexual nature. Regarding the [victim], [King] notes that prior to his current incarceration that the [victim] was undergoing mental health counseling through a local mental health agency. [King] was unaware if the [victim] is still continuing his counseling, but believed that in light

---

[2] This claim is also waived because the jury proceedings were not transcribed. See *Commonwealth v. Houck*, 102 A.3d 443, 456 (Pa. Super. 2014).

of the serious charges which have been leveled against him that the [victim] is delusional and acting in a sociopathic nature. For these reason[s], [King] contended that a mental health examination of the [victim] was warranted.

King's Brief at 27.

In support of his argument, King cites a 1984 trial court's decision for the proposition that "a victim of a crime of sexual violence may be compelled to undergo a psychiatric evaluation pursuant to Pa.R.Crim.P. 578, if the defendant can establish the necessity for the examination." Id. (citing Commonwealth v. Ramer, 30 Pa. D. & C.3d 50 (York County 1984).

We agree with King that, before any evaluation should be ordered by a trial court, a defendant must establish a need for a psychiatric evaluation to aid in a competency determination. What King fails to realize, however, is that the quantum of evidence required to justify the evaluation needs to be more than bare allegations of incompetency. The record itself must demonstrate a question of incompetency.

In Commonwealth v. Boich, 982 A.2d 102 (Pa. Super. 2009) (en banc), the Commonwealth appealed from the trial court's order granting the defendant's pre-trial motion requesting that the adult rape victim submit to an involuntary psychiatric examination for purposes of determining her competency to testify at trial. Among other reasons, the defendant based its motion on the victim's "mental instability." Boich, 982 A.2d at 106. This Court noted that a decision to disqualify a witness as incompetent is distinct

from ordering an involuntary psychiatric examination to assist the court in making this determination. We explained:

> When rendering a decision to disqualify a witness as incompetent, a court can rely on expert testimony. Nevertheless, whether the court can order an involuntary psychiatric examination of the witness to determine testimonial competency is an entirely distinct inquiry. The privacy implications of a compelled psychiatric examination are significant. Indeed, where the record fails to establish that there is a question as to the victim's competency, we refuse to sanction any intrusion into the victim's existing psychological records or any cross-examination as to psychiatric treatment. The presumption of witness competency is necessary to effectuate the fundamental polices underlying both the constitutional right to privacy and the statutory psychiatrist-patient privilege. Thus, a court-ordered, involuntary psychiatric or psychological examination should never be the starting point for a competency evaluation. Therefore, a court ought not to order an involuntary psychiatric examination of a witness unless the record unequivocally demonstrates a compelling need for the examination.

Boich, 982 A.2d at 110 (citations omitted).

This Court further noted in Boich that "Pennsylvania case law does not expressly define 'compelling need' in the context of a court-ordered, involuntary psychiatric examination of a sexual assault victim[.]" Id. at 111. Thus, we looked to see how other jurisdictions construed the term. After doing so, and reviewing Pennsylvania cases that compared attacks on credibility with competency, we stated:

> In an effort to transform his attack on [the victim's] credibility into an issue of testimonial incompetency, essentially [Boich] suggested her credibility failed as a matter of law such that it rendered [the victim] legally

> incompetent to testify. Albeit an aggressive defense, [Boich's] motions were bare allegations, which as presented did nothing more than attack [the victim's] credibility. Therefore, we conclude the motions did not make out a compelling need for a court-ordered involuntary psychiatric and/or psychological evaluation of [the victim].

Id. at 113. Thus, this Court held that the trial court erred in ordering an involuntary psychiatric evaluation of the rape victim on the grounds alleged. Id. at 15.

As in Boich, the trial court in this case correctly held that the bare allegations of King's pre-trial motion to compel the victim undergo a mental health evaluation did not establish the requisite compelling need. Indeed, at argument on the motion, King presented no addition information to support his "need" for such an examination. Moreover, King ignores the fact that it may be his own actions that necessitated the counseling the victim had received in this case. King's final basis for a new trial therefore is without merit.

In his final issue raised on appeal, Appellant argues that the trial court erred in denying his motion to dismiss all of the charges, pursuant to Pa.R.Crim.P. 600(A)(2)(a), because the 419-day period that his case was pending before this Court due the Commonwealth's appeal should be held against the Commonwealth. Accordingly, King "submits that the Commonwealth failed to act with due diligence in bringing him to trial within 365 days of the date of the original criminal complaint. The appropriate

relief is dismissal of all of [his] charges pursuant to Pa.R.Crim.P. 600(A)(2)(a)." King's Brief at 30.

Our standard of review for Rule 600 claims is an abuse of discretion. Commonwealth v. Watson, 140 A.3d 696, 697-98 (Pa. Super. 2016). Although King provides a complete Rule 600 calculation, we address only the delay caused by the interlocutory appeal, as that was how he characterized this claim in his Rule 1925(b) statement, and is the only portion of the calculation addressed by the trial court. In support of his claim, King first notes the fact that 120 days within this 419-day period was caused by the Commonwealth twice requesting an extension of time in which to file its brief and reproduced record. See King's Brief at 28-29. He then "submits that the interlocutory appeal filed against him was unwarranted as the Commonwealth['s] attorney had stated on the record at the September 3, 2015 Motions Hearing, that all that was required for a conviction was 'the victim's testimony alone', so why would the Commonwealth have to pursue an interlocutory appeal on [an] unnecessary evidentiary issue." King's Brief at 31-32.[3]

_____

[3] Curiously, King did not acknowledge this legal principle when presenting his sufficiency challenge. In addition, we note that a transcript of the hearing on King's Rule 600 motion does not appear in the certified record. See Commonwealth v. Monarch, 165 A.3d 945, 949 (Pa. Super. 2017) (explaining that when "a claim is dependent on materials not provided in the certified record, that claim is considered waived"). Nevertheless, we address King's claim because the parties do not dispute the 419-day period of delay at issue.

Pennsylvania Rule of Appellate Procedure 311(d) permits the Commonwealth to take an interlocutory appeal in certain circumstances. It provides:

> (d) Commonwealth appeals in criminal cases.—In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d). In denying King's motion for dismissal, the trial court cogently recognized the interplay between this rule and Pa.R.Crim.P 600, and recognized that King was essentially asking the court "to pass judgment on the propriety of the Commonwealth's Rule 311(d) certification relative to an evidentiary pretrial ruling." Trial Court Opinion, 6/1/17, at 13.

The Pennsylvania Supreme Court explained the interplay between the two rules as follows:

> Pa.R.A.P. 311(d) specifically allows for the pretrial appeal as an exception to the general bar to interlocutory appeals when the Commonwealth certifies that a trial court ruling will terminate or substantially handicap the prosecution. If Rule 600(G), as interpreted by [Commonwealth v. Matis, 710 A.2d 12 (Pa. 1998)], did not recognize the ancillary extension of time beyond the 365-day period of Rule 600(G), the Commonwealth's right to a pretrial appeal would be illusory, as the appeal would result in the loss of prosecution at the expiration of Rule 600(G)'s 365-day time limitation. Thus, this interplay of Pa.R.A.P. 311(d) and Pa.R.Crim.P. 600(G) protects, among other things, the Commonwealth's ability to seek review of adverse trial court rulings without facing the loss of prosecutions under Rule 600(G). Moreover, defendants do

not have their rights unconstitutionally infringed through this process as they are presumably at liberty, and their right to speedy trial is fully protected by the Commonwealth's obligation pursuant to Rule 600(G) to pursue diligently the initiation of trial.

Commonwealth v. Dixon, 907 A.2d 468, 476 (Pa. 2006) (citation omitted). Moreover, the high court has further explained that "[t]he certification by an officer of the Court guards against frivolous appeals or appeals intended solely for delay," and that "the Commonwealth's certification 'is not contestable' and 'in and of itself, precipitates and authorizes the appeal.'" Commonwealth v. Boczkowski, 846 A.2d 75, 87 (Pa. 2004) (citing Commonwealth v. Dugger, 486 A.2d 382, 386 (Pa. 1985)). In fact, the Pennsylvania Supreme Court has further held that "a Rule 311(d) certification by the Commonwealth, especially relative to an evidentiary ruling, is sufficient to trigger the Commonwealth's right to appeal, and appellate courts "are not authorized to go behind that certification." Boczkowski, 846 A.2d at 87.

Here, the trial declined to assess the propriety of the interlocutory appeal filed by the Commonwealth. The court then referred to its Pa.R.A.P. 1925(a) opinion in that direct appeal, and noted:

> [A]lthough we disagreed with the Commonwealth's need for Dr. Kupchella's supplemental report at trial, especially as it was authored on the eve of trial, and after a jury had been selected on October 1, 2015, we are not authorized to scrutinize the Commonwealth's certification to appeal our evidentiary ruling. This concept is understandable, as only the Commonwealth knows the caliber of any given piece of its evidence, and the potential risk it faces at trial if said evidence is excluded. Additionally, because we

> expeditiously scheduled a new trial upon resolution of the
> Commonwealth's interlocutory appeal, we do not believe
> that prejudice befell [King]. This is especially true given
> that during the pendency of the Commonwealth's appeal,
> we granted [King's] "Motion for Nominal Bail Pending
> Appeal Per Rule 600(B)(1)" via Order of May 2, 2016,
> albeit, with conditions to ensure community safety, and
> [King] was eventually released from the Cambria County
> Prison.

Trial Court Opinion, 6/1/17, at 14 (citation omitted).

Our review of the record supports the trial court's conclusions. King's claim of a Rule 600 violation based on the delay caused by the Commonwealth's interlocutory appeal is without merit.

In sum, the Commonwealth presented sufficient evidence to support King's convictions, and each claim regarding his request for a new trial and/or dismissal of the charges is without merit. We therefore affirm King's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/5/2018

- 17 -