J-S24011-17

2017 PA Super 176

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| SAMUEL ANTHONY MONARCH | |
| Appellant | No. 778 WDA 2016 |

Appeal from the Judgment of Sentence March 24, 2016
In the Court of Common Pleas of Venango County
Criminal Division at No(s): CP-61-CR-0000433-2015

BEFORE:  PANELLA, J., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, J.                    **FILED JUNE 06, 2017**

About an hour before noon on a Saturday morning, Donna Peltier, the mother of Appellant, Samuel Monarch, contacted the Franklin County 911 Emergency Services Center. She informed them that her son was intoxicated and had just driven away from her residence with his eight-year-old daughter. Officers caught up with Monarch inside his residence shortly thereafter and observed that Monarch's speech was slurred, he reeked of alcohol, and he was unstable while standing. Monarch refused to take sobriety tests and refused breath and blood tests.

At trial, Peltier testified that she did not believe Monarch to have been intoxicated when he drove away from her home. The Commonwealth

_____

[*] Former Justice specially assigned to the Superior Court.

impeached this testimony with a prior recorded interview of Peltier. The jury convicted Monarch of one count of driving under the influence/general impairment ("DUI") and one count of endangering the welfare of his daughter. The trial court increased the grading of the DUI conviction pursuant to 75 Pa.C.S.A. § 3803(b)(4), which imposes enhanced penalties for defendants convicted of DUI if they refuse a breath or blood test.

In this appeal from his judgment of sentence, Monarch raises four issues for our review. First, that the trial court erred in admitting the recorded interview of Peltier. Second, that the trial court erred in allowing Peltier's lay opinion on intoxication to be presented to the jury over Monarch's objection. Third, that the evidence presented by the Commonwealth at trial was insufficient to support his conviction. Finally, that pursuant to *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016), the imposition of an enhanced penalty based upon his refusal of blood tests was unconstitutional. After careful review, we affirm.

In his first two issues on appeal, Monarch challenges evidentiary rulings made by the court during trial.

> A trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. If the evidentiary question is purely one of law, our review is plenary.

*Commonwealth v. Belani*, 101 A.3d 1156, 1160 (Pa. Super. 2014) (citations and quotation marks omitted). "The court may exclude relevant

evidence if its probative value is outweighed by a danger of … unfair prejudice…." Pa.R.E. 403. "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id*., *Comment*.

Monarch first argues that the trial court abused its discretion in allowing the Commonwealth to present a recorded interview of Peltier to the jury. At trial, Peltier testified that Monarch had driven away from her home at approximately 8:30 a.m. on the morning in question. *See* N.T., Jury Trial, 2/12/16, at 134. She furthermore testified that Monarch did not exhibit any symptoms of being drunk, nor did she believe that Monarch was intoxicated when he drove away with his daughter in tow. *See id*., at 133-134.

Obviously nonplussed by Peltier's testimony, the Commonwealth sought to impeach Peltier with a recording of Peltier's interview with police investigators on the morning of Monarch's arrest.[1] Monarch asserts that recorded interview "was of limited probative value," and therefore should not have been admitted. Appellant's Brief, at 12. However, we note that the recording is not a part of the certified or reproduced records on appeal. Nor is there a certified transcription of the video in the record. We therefore have no ability to assess Monarch's assertion.

_____

[1] The Commonwealth declared it would use the recording solely for impeachment purposes. *See* N.T., Jury Trial, 2/12/16, at 161. In admitting the recording, the trial court instructed the jury that it could not use it as a substantive basis for a conviction. *See id*., at 169.

It is an appellant's responsibility to ensure that the certified record contains all the items necessary to review his claims. *See*, *e.g.*, **Commonwealth v. Tucker**, 143 A.3d 955, 963 (Pa. Super. 2016); **Commonwealth v. B.D.G.**, 959 A.2d 362, 372 (Pa. Super. 2008). "When a claim is dependent on materials not provided in the certified record, that claim is considered waived." **Commonwealth v. Petroll**, 696 A.2d 817, 836 (Pa. Super. 1997) (citation omitted). As we are unable to review the contents of the recorded interview, Monarch has failed to preserve this issue for our review. Monarch's first issue on appeal is therefore waived.

Even if we were to address this issue by focusing on the limited, select portions of the video that were the subject of questioning after the video was played, we would find that Monarch is not entitled to relief.[2] Monarch contends that Peltier's statements in the recording were equivocal. While the statements highlighted by Monarch can be fairly construed as equivocations, it is important to remember that the recording was presented solely as impeachment evidence. The jury was free to evaluate whether the recorded statements were inconsistent with Peltier's testimony at trial—and weigh Peltier's testimony accordingly. The trial court did not abuse its discretion in admitting the recording.

---

[2] The prosecutor purported to quote statements made by Peltier in the recording while questioning the police investigator who interviewed her. Neither the Commonwealth nor Monarch has asserted that these quotes are inaccurate.

Next, Monarch argues that the trial court erred in allowing the Commonwealth to present Peltier's hearsay, lay opinion that Monarch was intoxicated on the morning in question. Officer Steven Barnes testified at trial that Peltier had told him that Monarch was intoxicated when he left her home that morning. *See* N.T., Jury Trial, 2/12/16, at 149.

Lay witness testimony in the form of an opinion is limited to one that is:

> (a) rationally based on the witness's perception
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. "A lay person may testify to distinct facts observed by him concerning the apparent physical condition or appearance of another." *Commonwealth v. Counterman*, 719 A.2d 284, 301 (Pa. 1998) (citation omitted).

> Intoxication is a matter of common knowledge, and opinions given by lay people are permissible on the issue. However, the lay witness must have sufficient facts on which to base his opinion before he can express an opinion on another's intoxication. The court also looks to the witness'[s] personal knowledge and observation.

*Commonwealth v. Bowser*, 624 A.2d 125, 133 (Pa. Super. 1993) (citations omitted).

Monarch poses two challenges to the foundation for the admission of Peltier's lay opinion. First, he contends that Peltier's statement in the videotaped recording was equivocal, citing *Commonwealth v. Hughes*,

- 5 -

389 A.2d 1081 (Pa. 1978). As noted previously, this issue is waived due the absence of this recording from the certified record.

Even if we were to reach this argument, we would offer Monarch no relief. In *Hughes*, the Court held that a trial court properly excluded a lay witness's opinion that the appellant, Hughes, had been intoxicated. *See id*., at 1083. The foundation for the opinion was that Hughes's speech was "slightly slurred," that Hughes's gait was odd, and that he "swayed like back and forth" while talking. *Id*.

*Hughes* is plainly distinguishable. There, the Court was reviewing a trial court's decision to preclude the lay testimony. The decision to admit testimony is entrusted to the discretion of the trial court. An affirmance of that decision is not equivalent to a positive rule of law that all other trial courts must follow. Rather, it is merely a recognition that the trial court's decision was not unreasonable under the circumstances.

Here, the trial court exercised its discretion to allow the lay opinion. The foundation for the opinion included Peltier's previous experience with Monarch when he was drunk, *see* N.T., Jury Trial, 2/12/16, at 133, 174, and that he smelled of alcohol and stumbled when walking, *see id*., at 172. We cannot conclude that, under these circumstances, the trial court abused its discretion.

Monarch also contends that the trial court should have excluded Peltier's lay opinion due to the conflict with her testimony at trial. This was

an issue of weight for the jury to decide, not an issue of admissibility. **See Commonwealth v. McCrae**, 832 A.2d 1026, 1035 (Pa. 2003) ("Alleged prior inconsistencies … are classic points affecting evidentiary weight and not admissibility.") We can discern no reason to disturb the trial court's exercise of its wide discretion on this issue.

In his third issue on appeal, Monarch argues that the evidence presented at trial was insufficient to establish that he was intoxicated at the time he drove his daughter home from Peltier's home. Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. **See Commonwealth v. Dale**, 836 A.2d 150, 152 (Pa. Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Commonwealth v. Bruce**, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Id**. (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. **See id**. "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." **Commonwealth v. Kinney**, 863

A.2d 581, 584 (Pa. Super. 2004) (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Bruce**, 916 A.2d at 661 (citation omitted).

The fundamental basis of both of Monarch's convictions is the allegation that he was intoxicated when he drove his daughter home from Peltier's home on the morning in question. The core function for the jury during trial was to distinguish between mutually exclusive stories of what happened on that morning.

Monarch's significant other, Marcy Lusher, and Peltier testified to the jury that he came to Peltier's home around 8 a.m. that morning. While both acknowledged that Monarch appeared "hung-over," both adamantly claimed that he did not appear to be intoxicated at the time. Both Peltier and Lusher testified that they discussed Monarch's behavior for several hours after he left. Peltier told the jury that she called the police at 11 a.m. because she was still angry with her son due to a heated exchange between them when he had picked up his daughter. Lusher testified that Peltier "embellishes, she exaggerates, she says whatever she needs to say. … She fabricates, embellishes and exaggerates. It's just her personality." Thus, Monarch asserts, Peltier's subsequent statements to police were fabrications.

Furthermore, Lusher testified that earlier that morning, Monarch was involved in a work project with a colleague based in Europe. They were

working on coding a computer program together, and the project required a tremendous level of concentration and attention to detail. Monarch argues that this evidence establishes beyond peradventure that he was sober.

In contrast, the Commonwealth presented evidence that 911 Emergency Services received Peltier's call at approximately 11 a.m. that morning. *See* N.T., Jury Trial, 2/12/16, at 145. 911 Emergency Services informed the Franklin Police Department that Peltier claimed that her "son was removing an eight-year-old child from [Peltier's] household and he [was] getting into a vehicle while intoxicated and driving." *Id*., at 146.

Upon responding to Peltier's home, officers found Peltier and Lusher, who were both extremely upset. *See id*., at 148. Both Peltier and Lusher proceeded to inform officers that Monarch had just left Peltier's home, and that he was intoxicated. *See id*., at 149.

When officers located Monarch at his home, his vehicle's hood was warm to the touch and the engine was making a distinct clicking sound as it cooled. *See id*., at 213. Monarch had slurred speech, bloodshot and glassy eyes, had difficulty standing, and smelled strongly of alcohol. *See id*., at 195. He informed the officers that he had just walked from his mother's home. *See id*., at 196, 202. The responding officers all testified as to their opinion that he was intoxicated to the point of being incapable of safely operating a motor vehicle. *See id*., at 153, 203, 217.

The evidence at trial was sufficient to allow the jury to conclude that either story was the truth. The jury clearly believed the Commonwealth's witnesses over Peltier and Lusher. It was entitled to do so, and we, as an appellate court, cannot second-guess this function under the guise of a review of the sufficiency of the evidence. Monarch's third issue merits no relief.

In his fourth and final issue, Monarch argues that the sentence imposed by the trial court is unconstitutional. It is undisputed that Monarch was sentenced pursuant to 75 Pa.C.S.A. § 3803(b)(4), which imposed an enhanced penalty for an individual who refused blood or breath testing and was subsequently convicted of DUI. In *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016), the United States Supreme Court held that enhanced penalties for refusing a *blood* test were unconstitutional. *See id*., at 2186. In contrast, the Court held that enhanced penalties for refusing to consent to a *breath* test did not violate the Constitution. *See id*.

Here, Monarch refused not only the blood test, but also a breath test. *See* N.T., Jury Trial, 2/12/16, at 201. Thus, the enhanced penalties in § 3803(b)(4) were not unconstitutional as applied in this case.[3] Monarch's final issue on appeal merits no relief.

_____

[3] Monarch concedes that he did not preserve any *Birchfield* issue by lodging a timely objection. We review the application of *Birchfield* solely as it impacts the legality of the sentence imposed, as that claim is not waived.
*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2017

---

*(Footnote Continued)* ————————

***See Commonwealth v. Barnes***, 151 A.3d 121, 124 (Pa. 2016). Monarch has not explicitly argued, nor has he preserved, any other challenge based upon ***Birchfield***.