J-S83017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHELLE L. DUCKWORTH-FULCINITI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2437 EDA 2017 |
| JOHN B. FULCINITI | | |

Appeal from the Order Dated June 29, 2017
In the Court of Common Pleas of Northampton County Civil Division at
No(s): C-48-CV-2013-008151

BEFORE: GANTMAN, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY OLSON, J.: **FILED MARCH 09, 2018**

Appellant, Michelle L. Duckworth-Fulciniti (Wife), appeals from the equitable distribution order entered on June 29, 2017. We affirm.

The trial court summarized the facts and procedural history of this case as follows:

> On August 15, 2013, [Wife] filed a [c]omplaint in [d]ivorce against [] John B. Fulciniti (Husband), alleging that the parties were married on May 15, 1999, and that their marriage was irretrievably broken. Wife requested, therein, in addition to a divorce decree, an equitable distribution of the marital estate, alimony *pendente lite*, counsel fees, post-divorce alimony, and primary physical custody of the parties' two minor children. On that same date, Wife also filed a [p]etition for [s]pecial [r]elief seeking exclusive possession of the marital home. The docket does not reflect that said petition was ever heard. On February 20, 2015, in connection with another petition, the parties entered into an agreement on the record whereby Wife's exclusive possession of the marital home was confirmed [(as Wife was in exclusive possession of the marital home pursuant to a protection from abuse order (PFA))]. Wife has received

alimony *pendente lite* during the pendency of this action. The most recent [d]omestic [r]elations [o]rder, dated April 11, 2017, provides that Wife is to receive $1,203.00 per month for alimony *pendente lite*, in addition to $1,573.00 per month as child support for the parties' two children. Wife has sole legal and physical custody of the parties' two children at this time, pursuant to an [o]rder of [c]ourt dated September 13, 2016.

An [o]rder was entered on June 2, 2015, appointing Steven N. Goudsouzian as Special Master. Related to the issue of equitable distribution, the parties were directed to and did request a ruling on the issue of the applicability of their prenuptial agreement to Husband's retirement benefits. On February 19, 2016, an [o]rder was entered declaring that Husband's retirement benefits are subject to the parties' prenuptial agreement and that same shall be part of the marital estate. A hearing was held before the Master on July 28, 2016 for equitable distribution. As the hearing could not be concluded that day, same was reconvened for further proceedings on November 30, 2016. The Master's [r]eport was filed on March 1, 2017, to which both parties filed timely exceptions.

Trial Court Opinion, 6/29/2017, at 1-2 (footnote incorporated).

Relevant to this appeal, Wife took exception to the Master's recommendation that the marital home be listed for immediate sale with the proceeds to be divided between the parties. Wife argued that she be afforded the opportunity to retain the marital home. Wife further argued that the Master erred by denying her claim for alimony because she was cohabitating with her boyfriend. Finally, Wife averred that the Master erred by failing to award her requested attorney's fees totaling nearly $42,000.00.

The trial court denied Wife relief on the aforementioned claims by opinion entered on June 29, 2017.[1] This timely appeal resulted.[2]

On appeal, Wife raises the following issues for our review:

[1.] Did the trial court commit an error of law or abuse [its] discretion by ordering that the parties' marital home immediately be listed for sale without affording [Wife] the opportunity to retain the home?

[2.] Did the trial court commit an error of law or abuse [its] discretion by ordering that [] Husband's retirement benefits would be divided equally as opposed to awarding a greater percentage of the benefits to Wife?[3]

---

[1] The trial court did sustain several of Wife's other exceptions, but Husband has not cross-appealed those determinations. The trial court also granted two exceptions raised by Husband, but Wife does not challenge those decisions.

[2] On July 27, 2017, Wife filed a timely notice of appeal. On July 31, 2017, the trial court ordered Wife to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Wife complied timely and, on August 15, 2017, the trial court entered a statement pursuant to Pa.R.A.P. 1925(a) that it was relying upon its earlier decision entered on June 29, 2017 as its rationale for denying Wife relief. On August 18, 2017, this Court entered a *per curiam* order directing Wife to show cause why the equitable distribution order was final because it was unclear if a divorce decree had been entered. Wife responded and attached a copy of the parties' September 21, 2017 divorce decree. Although the divorce decree was entered subsequent to the instant appeal, the June 29, 2017 equitable distribution order is now final and appealable. ***See Busse v. Busse***, 921 A.2d 1248, 1253 n.2 (Pa. Super. 2007) (citation omitted) ("[a]lthough [o]rders of property distribution are not appealable until entry of a final divorce [d]ecree, case law holds that an award of equitable distribution is appealable where a divorce [d]ecree is entered while an appeal is pending.").

[3] "Although Wife had indicated that the [t]rial [c]ourt erred by failing to provide Wife with a disparate distribution of Husband's [r]etirement
*(Footnote Continued Next Page)*

[3.]   Did the trial court commit an error of law or abuse [its] discretion by denying [Wife's] claim for attorney's fees?

[4.]   Did the trial court commit an error of law or abuse [its] discretion by denying [Wife's] claim for alimony?

Wife's Brief at 5-6 (complete capitalization and suggested answers omitted).

We will examine Wife's fourth issue first, because it touches upon Wife's first issue, as well. Wife claims that the trial court erred as a matter of law or abused its discretion in denying her claim for alimony by "finding that Wife was cohabitating with a boyfriend, Matthew Leluga." Wife's Brief at 17. Wife contends that she presented evidence that Leluga owns his own home in Allentown, Pennsylvania. *Id.* She claims that Leluga does not reside at the marital home, but spends "about ten (10) to twelve (12) nights per month at the home," and "utilized the address in order to keep his child enrolled in the Nazareth School District." *Id.* at 17-18. Wife contends that the trial court erred by considering Nazareth School District enrollment forms, and a sanitation bill addressed to Leluga at the marital residence, indicating Leluga and his son were living at Husband's and Wife's home. *Id.* at 18-19. Wife claims that, "Leluga contributes nothing to the maintenance of the household" and "Leluga's use of Wife's home was [nothing] other than

_(Footnote Continued)_ ─────────

[b]enefits, Wife hereby withdraws [this] issue as the same was treated in accordance with the [p]arties' [p]re-[n]uptial [a]greement that directed an [e]qual [d]ivision." Wife's Brief at 9; see also *id*. at 31 ("Wife withdraws her issue on [a]ppeal requesting a disparate distribution of Husband's retirement assets[.]"). Because Wife has withdrawn this issue, we need not address it.

- 4 -

a temporary arrangement borne out of necessity to permit his son to continue to attend [s]chool in the Nazareth School District." *Id.* at 20-21. Wife avers that absent a finding of cohabitation, she would have been entitled to alimony because: (1) Husband's earning capacity significantly exceeded her own; (2) Wife is disabled and cannot pursue gainful employment; (3) Wife is sole custodian of the parties' minor children; (4) Husband engaged in misconduct and Wife sought protective orders for herself and the parties' two children, and; (5) Wife served as caregiver throughout the 16-year duration of the parties' marriage. *Id.* at 23-29.

> In reviewing equitable distribution orders,
>
> our standard of review is limited. It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. In addition, when reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate economic justice and we will find an abuse of discretion only if the trial court misapplied the laws or failed to follow proper legal procedures. Further, the finder of fact is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.
>
> We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the 23 Pa.C.S.A. § 3502(a) factors for consideration in awarding equitable distribution. If we fail to find an abuse of discretion, the order must stand.

*Harvey v. Harvey*, 167 A.3d 6, 16–17 (Pa. Super. 2017) (case citations and brackets omitted).

Moreover,

> [o]ur standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

*Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004) (internal citations and quotations omitted; emphasis in original).

Under 23 Pa.C.S.A. § 3706, "[n]o petitioner is entitled to receive an award of alimony where the petitioner, subsequent to the divorce pursuant to which alimony is being sought, has entered into cohabitation with a person of the opposite sex who is not a member of the family of the petitioner within the degrees of consanguinity." 23 Pa.C.S.A. § 3706. We have elaborated further by holding that cohabitation, for purposes of barring alimony, occurs when:

> two persons of the opposite sex reside together in the manner of husband and wife, mutually assuming those rights and duties usually attendant upon the marriage relationship. Cohabitation may be shown by evidence of financial, social, and sexual interdependence, by a sharing of the same residence, and by other means. An occasional sexual liaison, however, does not constitute cohabitation.

*Lobaugh v. Lobaugh*, 753 A.2d 834, 836 (Pa. Super. 2000) (citation and ellipsis omitted).

Here, the trial court determined:

[A]ll credible evidence leads [it] to conclude that Mr. Leluga is residing with Wife in the [marital] property, along with his son [M.]. At the time of the hearing, Wife and Mr. Leluga ha[d] been in a relationship for over a year. Mr. Leluga testified that he and his son resided with Wife for approximately 10-12 nights per month, for the purpose of permitting [M.] to attend school in the Nazareth School District. His testimony that he only stayed with Wife on the nights before [M.'s] school days while [M.] was in custody on a 50/50 basis, and that he did not stay alone with Wife on the nights when [M.] was with his mother, was not credible. While Mr. Leluga maintains an address in Allentown where he used to reside with his now-former wife, he testified that he intends to sell that property. In addition to using the [marital residence] address for school registration purposes, Mr. Leluga [listed the marital residence as his address] in his divorce settlement agreement dated September 2015 and [updated his] driver['s] license [through the Pennsylvania Department of Transportation] in August 2015. Mr. Leluga's name also appears as the responsible party on the garbage bill for the [marital residence]. Considering all of this together, [the trial court] believe[d] that the Master did not err in concluding that Wife is cohabiting with Mr. Leluga and that, as a result, she is not entitled to post-divorce alimony.

Trial Court Opinion, 6/29/2017, at 13-14 (record citations omitted).

Based upon our deferential standard of review and a review of the certified record, we discern no abuse of discretion or error of law in denying Wife alimony based upon her cohabitation with Leluga. Here, there was clear evidence that Wife and Leluga shared the same residence and maintained a relationship for well over a year. This was simply not an instance of an occasional sexual liaison. Moreover, there was evidence of

financial and social interdependence between Wife and Leluga. Leluga uses the marital residence as the basis for his son's attendance at a local school and he has taken on the financial responsibility for the garbage bill at the marital property. Wife and Leluga spend significant time together each month in the marital residence caring for Leluga's son. Moreover, the trial court found Leluga's claim that he did not spend the night with Wife at the marital residence on days when Leluga's son was not present, was not credible. We will not upset these determinations. Furthermore, Leluga took steps to change his driver's license from his Allentown address to the marital address and he intends to sell the Allentown property. These actions show more than a casual relationship and show Leluga's intent to cohabitate at the marital property with Wife. Thus, we discern no abuse of discretion or error of law in denying Wife's request for alimony.

Next, Wife avers that the trial court committed an error of law or abused its discretion in ordering the immediate sale of the marital home. Wife's Brief at 14-17. Wife argues that the trial court's decision did not afford her an opportunity to retain Husband's interest in the marital home. *Id.* at 14. She claims that if the trial court and the Master "believed that Wife was financially incapable of retaining the [m]arital [h]ome, then [she] should not have [been] ordered [] to make all timely [m]ortgage, [t]ax[,] and [i]nsurance [p]remium payments" pending sale. *Id.* at 15. Wife claims that these two directives are contradictory. *Id.* at 14. Next, Wife argues that the trial court's decision to deny her alimony has also impacted her

ability to refinance. *Id.* at 15. Wife further suggests that, "no evidence was presented to conclude that [] Wife could not [r]efinance" and [i]f necessary, Wife could have relied upon resources (such as help from family) to retain the interest in the [m]arital [h]ome." *Id.* at 15. She claims that "the [p]arties' minor children reside solely with Wife in the [m]artial [h]ome" and the trial court's adoption of the Master's decision to sell the residence "would require the children to leave the only [h]ome they have known and further disrupt their lives." *Id.* at 15-16.

The statute governing equitable division of marital property states as follows:

> Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets.

23 Pa.C.S.A. § 3502(a). Moreover, "[t]he court may award, during the pendency of the action or otherwise, to one or both of the parties the right to reside in the marital residence." 23 Pa.C.S.A. § 3502(c).

The court looks at eleven factors relevant to the equitable distribution of martial property:

> the length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or

- 9 -

dissipation of each party to the acquisition, depreciation or appreciation of marital property, value of each party's separate property, standard of living established during the marriage; economic circumstances of each party and whether the party will be serving as custodian of any dependent children.

The weight to be given to these statutory factors depends on the facts of each case and is within the court's discretion. We will not reweigh them. We look at the distribution as a whole, in light of a trial court's overall application of the factors enumerated at 23 Pa.C.S.A. § 3502(a). In addition[,] we note the trial court has the authority to divide the award as the equities presented in the particular case may require.

*Busse v. Busse*, 921 A.2d 1248, 1259–1260 (Pa. Super. 2007) (internal case citations and quotations omitted), *citing* 23 Pa.C.S.A. § 3502(a)(1)-(11).

This Court further recognized that

the methods by which divorcing parties effectuate economic justice are familiar and well settled. The process of equitable distribution is an exercise in marshalling, valuing and dividing the marital pot in a fair manner. Not every piece of property can or should be split in half. Sometimes one spouse is entitled to more property than is the other. In some instances, the sale of property must occur so that each spouse can receive his or her rightful amount. In other instances, a spouse may be allocated a specific item of property and the other spouse will receive cash or a credit for his or her share in that same item.

*Moran v. Moran*, 839 A.2d 1091, 1095 (Pa. Super. 2003) (citation omitted).

In this case, the trial court determined:

Wife is, and was throughout the marriage, unemployed. Wife has a disabling injury related to a premarital vehicle accident, and receives Social Security disability income in the approximate amount of $1,217.00 per month. [] Wife also receives child support in the amount of $1,573.00 per month. [] Wife will not

- 10 -

be receiving post-divorce alimony. Wife has no other income, nor does she have an intention to seek gainful employment.

The fair market value of the marital home is $456,000.00. The parties purchased the property in 2009 for $551,111.41. As of July 2016, the principal balance on the mortgage was $410,426.00. Wife is, simply, without the financial means to refinance the property to purchase Husband's interest therein. Given her other expenses, including necessary expenditures for food and utilities, her monthly car payment in the amount of $765.00 for a luxury vehicle, and the expenses inherent in raising two children, it is beyond cavil that Wife's monthly income of $2,790.00 will not allow her to make payments on a mortgage loan with a principal balance in excess of $400,000.00. Furthermore, when Wife attempted to secure financing at the instruction of the Master, she was, at best, given an indication that she could reapply after one year. Accordingly, the home must be sold to a third party.

With respect to the proceeds of the sale, we find that the prenuptial agreement controls the disposition thereof.[4] As provided in ¶ 4(c) of the prenuptial agreement, any marital property that is titled "shall belong to the party whose name is on the title regardless of the source of funds utilized to purchase or maintain the property." Accordingly, because the marital home is titled equally in the names of both parties, the proceeds of the sale thereof are to be equally divided by the parties. In the same vein, whereas the ownership of real property inherently risks loss as well as gain, because the property is titled equally between the parties [the trial court found] that any loss from the sale of the property must be equally borne by the parties as well.

Trial Court Opinion, 6/29/2017, at 4-5.

Upon review, we discern no abuse of discretion or error of law in ordering the marital home to be sold. Here, the trial court carefully weighed

_____

[4] Wife does not challenge the trial court's determination that the prenuptial agreement controls the disposition of the sale of the marital residence.

- 11 -

the eleven factors set forth at Section 3502(a) and determined that Wife was without the financial resources to maintain the marital residence by herself. Having already determined that the denial of Wife's claim for alimony was proper, we summarily reject her argument that if she were entitled to alimony she could refinance the home. We further note that Wife was receiving $1,203.00 in alimony *pendente lite* and given possession of the marital residence while the equitable distribution was pending pursuant to 23 Pa.C.S.A. § 3502(c). Thus, Wife was receiving additional income in the form of alimony leading up to equitable distribution, which she will no longer receive. Hence, while it may have been financially feasible for Wife to maintain the marital residence while the parties were separated, this would no longer be economically viable once the equitable distribution scheme was established to effectuate economic justice. Moreover, to the extent that Wife baldly argues she could obtain funds from family members, she did not present any such evidence to the Master or the trial court. Under 42 Pa.C.S.A. § 3602(a)(5), the trial court may consider "[t]he opportunity of each party for future acquisitions of assets or income." 42 Pa.C.S.A. § 3602(a)(5). It was therefore Wife's responsibility to show that she had access to additional funds when submitting her claims for equitable distribution. Moreover, at the time of the equitable distribution hearing, there was evidence that Wife could not immediately secure financing for the marital home and that she could reapply to refinance the mortgage in another year. Thus, we reject Wife's claim that there was no evidence to

conclude that she could not refinance the martial property on her own.

Accordingly, based upon all of the foregoing we discern no abuse of

discretion by the trial court in ordering the sale of the marital property.

Finally, Wife claims that the trial court erred as a matter of law or

abused its discretion in denying her request for attorney's fees. Wife's Brief

at 29-30. In sum, she avers:

> Wife has incurred significant [a]ttorney's [f]ees in this [a]ction. Wife presented [] an [i]nvoice [] indicating that at the time of the July 28, 2016 [h]earing, Wife owed $41,967.95 in [a]ttorney's [f]ees. Although some of these [a]ttorney's [f]ees were incurred because of [c]ustody and PFA matters, much [of this sum was] incurred because of the [d]ivorce [a]ction and the unreasonable actions of Husband.
>
> Wife is without the means to afford her [a]ttorney[']s fees given her disability, her lack of substantial income and her responsibility to care for the [p]arties' minor children. Husband, on the other hand, presented no evidence regarding his legal costs. It is apparent that Husband is capable of affording his legal costs without any financial distress. Accordingly, it is requested that the [t]rial [c]ourt's [o]rder denying Wife's claim for [a]ttorney's [f]ees be reversed.

***Id.*** at 30.

We review the determination of counsel fees in a divorce action for an

abuse of discretion. ***Busse***, 921 A.2d at 1258. We have previously

recognized:

> The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be on par with one another.

Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

Counsel fees are awarded only upon a showing of need. In most cases, each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate. Also pertinent to our review is that, in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder.

*Id.* (internal citations and quotations omitted).

Initially, the Master determined that there was no evidence of record to support an award of counsel fees to Wife, but otherwise denied Wife's request opining that, "[b]oth parties have incurred a significant amount of attorney['s] fees and have no one to blame but themselves" and "[w]hile the level of fault may be different, both parties are on par in defending their action for divorce." Master's Report, 3/1/2017, at 21. Upon further review, the trial court noted that, "[t]here is, clearly, a disparity between the earnings and earning capacities of the parties." Trial Court Opinion, 6/29/2017, at 11. The trial court also recognized that Wife was disabled prior to the marriage, had never worked during the course of the marriage, and was unlikely to earn a sustaining future income. *Id.* Whereas, Husband is a union plumber earning approximately $80,000.00 in gross income per year. *Id.* Nevertheless, the trial court denied Wife's request for attorney's fees, pronouncing:

[Despite a clear disparity in earning capacity,] it is also clear that Wife has not attempted to live within her means. Despite her

- 14 -

modest income, Wife has seen fit to remain in a home with a[n outstanding principal] mortgage [balance of] over $400,000.00 and to purchase a vehicle with a monthly payment in excess of $750[.00] since the parties' separation. During this time, Wife has been receiving alimony *pendente lite*, one of the purposes of which is to enable a dependent spouse to maintain the divorce action. Rather than using these funds for their intended purpose, Wife has been using them to maintain a lifestyle that is unreasonable for someone of her financial means. Husband should not be required to further subsidize this choice. Accordingly, [the trial court did] not find it appropriate to award Wife any amount for counsel fees[.]

*Id.* at 11-12.

We agree. We begin our analysis by noting that Wife concedes that of the approximately $41,000.00 in submitted attorney's fees, at least some of those fees were for the child custody and PFA actions which are unrelated to the divorce action. Upon review of the certified record, we were unable to locate Wife's invoice for attorney's fees, submitted as Exhibit 22 at the Master's hearing. It is an appellant's responsibility to ensure that the certified record contains all the items necessary to review her claims. ***Commonwealth v. Monarch***, 165 A.3d 945, 949 (Pa. Super. 2017) (internal citations omitted). "When a claim is dependent on materials not provided in the certified record, that claim is considered waived." ***Id.*** (citation omitted). Without the invoice for attorney's fees, we are unable to confirm the amount of reasonable fees solely related to Wife's divorce action. We further note that the prenuptial agreement, which has been the subject of dispute as set forth above in resolving issues pertaining to the marital home, provides that:

> The parties desire and agree that should either party contest this [a]greement for any reason whatsoever, and litigation ensues as a result thereof, then in that event the party who contests this [a]greement shall pay the non-contesting part[y's] reasonable legal fees, including, but not necessarily limited to, reasonable [a]ttorney's fees, and court costs.

Husband's Brief Supporting Validity of Pre-Nuptial Agreement, 1/7/2015, Exhibit A, at 6, ¶ 8. Thus, Wife would not be eligible to receive attorney's fees for any challenges to the prenuptial agreement. Upon review, and as set forth above, portions of the divorce proceedings were dedicated to litigating the prenuptial agreement regarding the sale of the marital residence. However, again, without the invoice for Wife's attorney's fees, it is impossible to ascertain what percentage of the submitted fees were spent litigating the prenuptial agreement. For all of the foregoing reasons, we could find this claim waived.

Regardless, assuming *arguendo* Wife did not waive her argument, we would agree with the trial court's assessment and discern no abuse of discretion or error of law in denying Wife's request for attorney's fees. The trial court recognized that there was a disparity in earning capacity between Husband and Wife, but concluded that Wife failed to demonstrate a need for her counsel fees, specifically examining Wife's ability to pay and her financial resources. In particular, the trial court cited Wife's post-separation acquisition of a luxury automobile (with a $750.00 monthly payment) as one reason to deny counsel fees. The trial court also determined that Wife had been receiving alimony *pendente lite* for the four years prior to the divorce. Thus, the trial court made a factual determination that Wife had squandered

her available assets and was living well beyond her means. Wife does not challenge these findings on appeal and we will not upset them. As such, Wife's final issue was waived, but otherwise without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:3/9/18