J-S46033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ZACHARY GREENE :
:
Appellant : No. 2298 EDA 2016

Appeal from the Judgment of Sentence, June 14, 2016,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0002215-2013.

BEFORE: BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:               **FILED NOVEMBER 28, 2018**

Zachary Greene appeals from the judgment of sentence, which the trial

court imposed after a jury convicted Greene of robbery, possession of an

instrument of a crime, simple assault, and recklessly endangering another

person.[1]  For the reasons below, we affirm.

## Factual Background

On September 4, 2012, in the early evening, Greene robbed the

Neighborhood Convenience Store, located in a residential part of Philadelphia.

He pulled a gun on the cashier, Ms. Jatnna Angeles.  Ms. Angeles, a young

woman, had immigrated to the United States from the Dominican Republic

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 907(a), 2701(a), and 2705, respectively.

around 2006. English is her secondary language, and she has difficulty with measurements in inches and feet.

During the crime, Greene hid most of his firearm inside a dark plastic bag but exposed the barrel of the gun on top of the cashier's counter. He told Ms. Angeles to place the money from the register into the bag; it came to between $200 and $300. He also stole a pack of cigarettes.

The robbery greatly traumatized Ms. Angeles. She soon resigned her job at the Neighborhood Convenience Store, out of fear that she might become the victim of another armed robbery. Moreover, Greene's crime so distressed Ms. Angeles that she was afraid he would attack her at the line-up, preliminary hearing, and trial, despite the presence of police officers and/or deputies at all three locations.

Due to her unfamiliarity with the English system of measurements, Ms. Angeles had trouble providing investigators with a consistent height for the robber. However, she constantly maintained that her assailant – whom she viewed for a full 20 seconds, face-to-face, from only a yard or two away – was an African-American man, had a lighter complexion, facial hair, and a slender build. Greene matches that description, and she successfully picked him out a photo array, which led to his arrest.

Also, Ms. Angeles' description matched the image of Greene in the convenience store's surveillance video, which recorded him robbing the store from above and behind her head. In other words, the camera had the same view of Greene as Ms. Angeles.

Although she could not identify Greene during the line-up, Ms. Angeles testified that she had never been in a prison before and that she was afraid he would see her through the glass. She was also scared that Greene or one of his friends might harm her for cooperating with the authorities. Thus, she was very upset and nervous during the line-up to the point of tears. Critically, Ms. Angeles successfully identified Greene as the robber at the preliminary hearing and several times during the jury trial without equivocation.

Also, one the investigating officers, Detective John Harrigan, testified at trial regarding the steps he took to identify and arrest the robber. As a part of that testimony he explained that he watched the video surveillance from the Neighborhood Convenience Store. The assistant district attorney then asked him, "Detective, based on your view of the video in your investigation, who did you believe was in that video?" N.T., 4/18/16, at 33.

Defense counsel objected, on the grounds that the question called for Detective Harrigan to give lay opinion testimony. The trial court overruled the objection and said the testimony was proper "if he obtained the information, he believed it was the defendant, or gathered information that he believed developed the defendant as the suspect." *Id.* The detective then indicated that he believed that Greene was the man in the surveillance video, and, therefore, he included Greene's picture in the photo array that he presented to Ms. Angeles. Sure enough, she picked Greene's picture out of the photo array as the robber.

The jury convicted Greene on all counts – *i.e.*, robbery, possession of an instrument of a crime, simple assault, and recklessly endangering another person.[2]

The trial judge received and reviewed the pre-sentencing report, which contained Greene's prior offenses as well as his personal information. That background information included the facts that he had graduated high school and attended one semester of college and "that he didn't have any kind of support, whether material or otherwise, from his family." N.T., 6/14/16, at 8. Defense counsel also pointed out that Greene worked as a chimney sweep from 2006 to 2013. *See Id.* at 9.

These mitigating factors did not persuade the trial judge, who imposed a sentence in the aggravated range of the guidelines. In crafting an aggregate sentence of 7 to 14 years of incarceration, she opined from the bench as follows:

> this is the kind of case that sort of – unfortunately – typifies urban life in Philadelphia. You have a neighborhood store. I believe the complainant came from the Dominican Republic to try to create a life for herself. She is in a small store in the community, urban community, trying to make out a living as a cashier, and [Greene] comes in and robs her at gunpoint, I believe with a plastic bag if my memory serves me correctly. And it was broad daylight from what I can recall. The images were captured on video, so it's very, very disturbing that a young woman was subjected to this

---

[2] The Commonwealth had also charged Greene with various firearm-based offenses, but the trial judge acquitted him on those charges before submitting the case to the jury. *See* N.T., 4/18/16, at 78-79.

kind of situation over nothing – over I don't know. I don't recall how much money.

**DISTRICT ATTORNEY:** It's $200.

**THE COURT:** With her life and her safety on the line for nothing really. Looking at [Greene's] history, as we've heard, his Record Score is a one, and he doesn't have any juvenile history. But he has had, according to the PSI, eight arrests, which includes the arrest that brings us here today; five convictions, two commitments. We have DUIs, disorderly conduct, [unauthorized use of an automobile], this drug case in Municipal Court before Judge Deleon. You could look at that and say, well, those are relatively minor matters. But then you really stepped up with pulling an armed robbery of a neighborhood store and terrorizing a complainant, who now has difficulty being able to function. I believe she had to leave the employment. She can't work there anymore, because of that horrific experience. So all that has to be considered.

As Commonwealth has indicated, [Greene has] pretty much had a pretty good go of it, in terms of light sentences and moving back and forth between Montgomery County and Philadelphia and pretty much having his way. Getting arrested while out on this case, so certainly that's disturbing, in that he has no regard for the process to . . . stay clear while the trial was pending. He's still out with drugs and doing all kinds of things.

So accordingly, the jury has spoken. This is a serious crime, this is not disorderly conduct; this is not [an unauthorized use of an automobile]. This is a very serious matter, and it's going to require a serious sentence.

Accordingly, I sentence [Greene] to 7 to 14 years of state incarceration. I think that's what it merits.

N.T., 6/14/16, at 13-15.

Greene filed timely post-sentence motions with the trial court, which the judge denied. This appeal followed.

## Analysis

Greene brings three claims of error. First, he asserts that Detective Harrigan gave impermissible, lay-opinion testimony to the jury in violation of Pennsylvania Rule of Evidence 701. Second, Greene claims that the trial court improperly charged the jury regarding Ms. Angeles' testimony that, on several occasions, identified him as the robber. Third, he seeks our allowance of appeal relative to the discretionary aspects of the trial court's 7 to 14 year sentence.

We will address each of Greene's claims of error in turn.

*A.*    *The Trial Court Reasonably Viewed Detective Harrigan's Testimony as an Investigative Background – Not Lay Opinion.*

Frist, Greene contends that Detective John Harrigan offered lay-opinion testimony to the jury and improperly identified Greene as the robber in the surveillance video. Greene thus believes that the trial judge abused her discretion when she allowed an answer to the following question: "Detective, based on your view of the video in your investigation, who did you believe was in that video?" N.T., 4/18/16, at 33.

Evidentiary rulings rest in the trial court's sound discretion, and we will only disturb its decision upon a showing that the court clearly abused that discretion. **Commonwealth v. Kennedy**, 959 A.2d 916, 923 (Pa. 2008); **Commonwealth v. Kendricks**, 30 A.3d 499, 503 (Pa. Super. 2011). An abuse of discretion is not merely an error of judgment but "the overriding or misapplication of the law, or the exercise of judgment that is manifestly

unreasonable, or the result of bias, prejudice, ill-will, or partiality as shown by the evidence of record." ***Commonwealth v. Weakley***, 972 A.2d 1182, 1189 (Pa. Super. 2009).

In questioning Detective Harrigan, the Commonwealth asked:

You were able to view a video in this case, correct?

**A:** Yes, ma'am.

**Q:** And that aided your investigation?

**A:** Yes, ma'am.

[The prosecutor played the video for the detective.]

**Q:** Detective Harrigan, did you recollect what's depicted in [this video]?

**A:** The inside of 1351 Fillmore Street is a store.

**Q:** And Detective, is this the video that you watched to aid in your investigation?

**A:** Yes, ma'am.

**Q:** Okay. Now, Detective, based on your view of the video in your investigation, who did you believe was in that video?

N.T., 4/18/16, at 32-33.

Greene's attorney objected to this question, and the trial court overruled his objection, stating "This is part of the investigation." N.T., 4/18/16, at 33. Detective Harrigan said he believed that Greene was the man in the video.

On appeal, Greene asserts that this testimony was:

a lay opinion with no foundational basis that the detective was familiar with [him], and usurps the jury's role in determining whether [Greene] was the robber or not . . . As such testimony was not helpful to the jury, its admission violated Rule 701 of the Pennsylvania Rules of Evidence and was error.

Greene's Brief at 16.

Pennsylvania Rule of Evidence 701 provides that:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a)     rationally based on the witness's perception;

(b)     helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c)     not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

In order for Pa.R.E. 701 to apply at all, the testimony at issue must be "an opinion." The trial judge disagreed with Greene that the detective's testimony was "an opinion." Pa.R.E. 701. Therefore, she declined to apply Rule 701.

She held that "Detective Harrigan was merely testifying as to what the process was that he went through during the investigation of the robbery at the convenience store . . . he was stating that, based on the video he saw, he determined that [Greene] was the suspect who the witness identified earlier." Trial Court Opinion, 12/22/17, at 4. Thus, the trial court concluded that this "testimony was not offered to show that [Greene] was definitively the person in the video, but merely to show the jurors the steps taken by him during his investigation." *Id.*

- 8 -

In his appellate brief, Greene ignores this threshold determination by the trial judge. Instead, he presumes an unsubstantiated premise – namely, that Detective Harrigan's testimony is an opinion. Thus, he does say the trial court's view of the detective's testimony was incorrect, much less explain how it amounted to "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality as shown by the evidence of record." *Weakley*, 972 A.2d at 1189. Moreover, we affirm admission of testimony upon "recognition that the trial court's decision was not unreasonable under the circumstances." *Commonwealth v. Monarch*, 165 A.3d 945, 950 (2017), *appeal granted in part*, 179 A.3d 3 (Pa. 2018).

Considering all of the detective's testimony, the jurors' ability to watch the surveillance video for themselves, and Ms. Angeles' multiple identifications of Greene at trial, the Commonwealth did not really need Detective Harrigan to identify Greene. Thus, the trial judge's conclusion that the detective was only explaining the steps of his investigation – rather than giving an opinion as to Greene's identity – was reasonable. And, while we may have arrived at a different conclusion ourselves, if we had sat in the trial judge's place, a difference in judgment between a trial judge and us is insufficient grounds for reversing the admission or exclusion of evidence.

The trial judge, in classifying the detective's testimony as non-opinion evidence, selected between two reasonable alternatives. Thus, Greene's insistence in his brief that we adopt the rule on lay-opinion testimony from

*Massachusetts v. Austin*, 657 N.E.2d 458 (Ma. 1995), and similar federal cases[3] is premature. This Court does not need to decide if Pa.R.E. 701 must be construed like its Massachusetts and federal counterparts to resolve this appeal. Thus, we save that question for another day.

In sum, applying our deferential standard of review, we have no basis to disturb the trial judge's reasoned conclusion that Pa.R.E. 701 did not apply. As such, we find Greene's first appellate issue meritless.

B.     *The Trial Court Did Not Abuse Its Discretion in Charging the Jury.*

Next, Greene argues that the trial judge gave an improper charge to the jury, under *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954).

There are two, possible *Kloiber* instructions that the trial court might give to a jury regarding eye-witness identification of the defendant. Greene wanted the judge to give the first alternative charge, which is "In this case [there was evidence that [Ms. Angeles] could not see the criminal clearly] *[give specifics]*. Therefore, you must consider with caution [her] testimony identifying the defendant as the person who committed the crime." PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 4.07B.

The trial judge gave the second alternative instruction, instead:

> If you believe that [this factor is] [one or more of these factors are] present, than you must consider with caution [Ms. Angeles'] testimony indentifying the defendant as the

---

[3] The *Austin* Court laid down a series of factors for trial courts to weigh in determining if a lay opinion may be offered to identify an individual in a video.

- 10 -

person who comitted the crime. If, however, you do not believe that [this factor] [at least one of these factors] is present, then you need not receive the testimony with caution; you may treat it like any other testimony.

*Id.* In other words, she allowed the jury to decide whether a **Kloiber** factor was present, and, if so, whether that factor required it to view Ms. Angeles' identification of Greene with caution.

Greene, on the other hand, believed that, because Ms. Angeles failed to identify him in the line-up and reported his height inconsistently to the police, at least one **Kloiber** factor was present, as a matter of law. He therefore argued that the jury had to receive the identification with caution. Greene also asserts that the trial court's reading of the second **Kloiber** charge violated his due process rights under the Constitution of the United States, requiring a new trial. **See** Greene's Brief at 27.

The parties disagree as to our standard of review for this issue. Greene says that the **Kloiber** instruction presents "a question of law for which review is plenary."[4] Greene's Brief at 2. The Commonwealth disagrees. It says that the question before us is whether "the trial court *abused its discretion* by

---

[4] While there is some inconsistency in our precedents as to whether "plenary" appropriately refers to the standard of review or the scope of review, the word derives from the Latin "*plenia*," meaning "full." "Plenary" therefore more correctly describes *how much* an appellate court may review, vis-a-vis, the "full" record. Thus, "plenary review" most accurately describes a *scope* of review, where the appellate court may examine the entire record. The better description for the standard of review that Greene wants us to apply is a "*de novo*" review – *i.e.*, a "new" review, one "from scratch" without any deference to the trial court's ruling.

- 11 -

giving a particular version of a *Kloiber* identification instruction . . . ." Commonwealth's Brief at 3 (emphasis added).

The Commonwealth is correct:

> A trial court has **broad discretion** in phrasing its points for charge, and is not bound to give instructions in the form requested . . . Moreover, a trial court need not accept counsel's wording, but may choose its own so long as the area is adequately, accurately and clearly presented to the jury for their consideration. Finally, an appellate evaluation of the charge must be based on an examination of it as a whole to determine whether it was fair or prejudicial.

*Commonwealth v. Ohle*, 470 A.2d 61, 70 (Pa. 1983) (some punctuation and citations omitted). Applying this highly deferential standard of review, we find that trial judge's selection of the second *Kloiber* charge was well within her "broad discretion" in charging the jury. *Id.*

As she explained:

> The first [*Kloiber*] alternative is appropriate when the eye witness cannot clearly see the criminal and therefore as a matter of law their testimony should be considered with caution. In the second alternative, it is within the providence of the jury to determine whether the inaccuracies or equivocations of the witness in identifying the defendant should be treated with caution. In the present case, [Ms. Angeles] was mere inches away from [Greene], and, even with a hood partially covering his face, she had a clear view of him. The fact that [Ms. Angeles] did not initially identify [Greene] at a lineup is taken into consideration in [the second *Kloiber*] charge. However, it was appropriate to let the jury weigh her credibility and judge whether to treat her identification testimony with caution.

Trial Court Opinion, 12/22/17, at 4.

The learned trial judge's opinion elucidates her well-reasoned basis for giving the second **Kloiber** charge to the jury, and we would be remiss to say she abused her "broad discretion" in any manner. **Ohle**, **supra**. Indeed, Greene does not claim otherwise. Instead, misinterpreting our standard of review as *de novo*, he reargues his case to us, as if we were deciding how to charge his jury ourselves. We are no position to do so.

We therefore conclude that Greene's second issue affords him no relief, as well.

C.    *Allowance of Appeal from Discretionary Aspects of Sentence Denied.*

Finally, Greene would argue that the trial court improperly focused only on the aggravating factors ("including the nature of the offense, his prior record, and the deadly weapon enhancement, that were already factored into the sentencing guidelines"), without also giving full consideration to his personal needs and other mitigating factors. Greene's Brief at 27. As such, he seeks to assert that his sentence is manifestly unreasonable and excessive.

The Commonwealth disagrees and stands behind the reasoning of the trial judge, which we related above. It also points out that we presume, as a matter of law, "that when, as here, a presentence report existed, the trial court . . . considered information in that report about the [Greene's] character and . . . the statutory mitigating factors." Commonwealth's Brief at 16 (**citing Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988)).

Greene acknowledges he is seeking to attack the discretionary aspects of the trial court's sentence. **See** Greene's Brief at 10. As such, he has no automatic right of appeal on this issue. **See** 42 Pa.C.S.A. § 9781(b).

Instead, Greene must petition and convince us to assert our appellate jurisdiction. **Id.** Before this Court will assert that jurisdiction and reach the merits his appeal, Greene must (1) raise the issues at either the time of sentencing or in a post-sentence motion, (2) file a timely notice of appeal, (3) satisfy Pennsylvania Rule of Appellate Procedure 2119(f), and (4) present a substantial question for review. **See Commonwealth v. Stein**, 39 A.3d 365, 370 (Pa. Super. 2012), **and also Commonwealth v. Foust**, 180 A.3d 416, 439 (Pa. Super. 2018). Greene has clearly satisfied the first three prongs of the test, so we must only decide whether his requested appeal presents a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Radecki**, 180 A.3d 441, 468 (Pa. Super. 2018) (citation omitted). This Court defines a substantial question as "a colorable argument that the trial judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Patterson**, 180 A.3d 1217, 1232 (Pa. Super. 2018) (**quoting Commonwealth v. Prisk**, 13 A.3d 526, 533 (Pa. Super. 2011).

In his Pa.R.A.P. 2119(f) statement, Greene takes a shotgun approach. He fires off, by our count, **six** theories that this appeal raises a substantial

question.[5]  He also puts his cart before the horse and, instead of explaining how a substantial question is present, dives into his merits argument.

For example, for his first substantial-question claim, Greene asserts the conclusion that he must ultimately prove to win this issue on the merits.  He argues that "[a]llowance of appeal should be granted . . . because the trial court abused its discretion in imposing an unreasonable sentence and many substantial questions are presented for review."  Greene's Brief at 10.  But whether the trial court abused its discretion is the substantive issue that he

---

[5] This shotgun approach appears, at best, excessive.  More importantly, this is similar to an appellant who raises five or more issues on appeal.  It can give the impression that none has any merit.  Justice Robert H. Jackson warned of the dangers of this approach many years ago:

> Legal contentions, like the currency, depreciate through overissue.  The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error.  But receptiveness declines as the number of assigned errors increases.  Multiplicity hints at a lack of confidence in any one.  Of course, I have not forgotten the reluctance with which a lawyer abandons even the weakest point lest it prove alluring to the same kind of judge.  But experience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one.

Ruggero J. Aldisert, J. "Winning on Appeal:  Better Briefs and Oral Argument," at 129 (2d ed. 2003) (*quoting* Robert H. Jackson, "Advocacy before the United States Supreme Court," 37 Cornell L.Q. 1, 5 (1951)).  This "much quoted" advice, unfortunately, "often 'rings hollow'...." **Commonwealth v. Robinson**, 864 A.2d 460, 480 n.28 (Pa. 2004) (*citing* Ruggero J. Aldisert, J. "The Appellate Bar:  Professional Competence and Professional Responsibility– A View from the Jaundiced Eye of the Appellate Judge," 11 Cap. U.L. Rev. 445, 458 (1982)).

currently petitions for us to decide. Thus, it would be absurd for us to rely upon that undecided, substantive conclusion to determine if we should grant his allowance of appeal. We decline to adopt Greene's circular reasoning on this point.

For his second substantial-question claim, Greene simply rephrases his conclusory premise – "This Court should grant allowance of appeal from the discretionary aspects of appellant's sentence, because the sentence is unreasonable." Greene's Brief at 11. But that does not speak to either prong of the substantial-question test, and repeats the sequential error of Greene's first attempt at obtaining appellate review. Thus, we find no substantial question here, either.

Third, Greene accuses the trial court of "'double counting' factors already included in" the sentencing guidelines. *Id.* In other words, he does not think that trial judge should have considered the violent nature of his crimes, the great trauma that a victim suffered, his use of deadly weapon, or his lengthy criminal record in fashioning his sentence. He cites no case law for this proposition, and we are unaware of any such precedent. On the contrary, we hold that these are common and appropriate aggravating factors for a sentencing court to consider. Indeed, Pennsylvania trial judges may and often do weigh such factors on a daily basis when sentencing violent offenders, such as Greene. Thus, we find no substantial question on the grounds of Greene's so-called "double counting."

Fourth, Greene cites **Commonwealth v. Dodge**, 859 A.2d 771 (Pa. Super. 2004), *appeal granted and vacated*, 935 A.2d 1290 (Pa. 2007), to argue that the trial court's failure to address all sentencing criteria presents a substantial question. This reliance is misplaced.

In **Dodge**, the trial court convicted the defendant on 37 counts of theft and drug-related crimes and sentenced him consecutively on every count. This resulted in an aggregate sentence of 58 ½ to 124 years. Applying the plurality opinion of **Commonwealth v. Mouzon**, 812 A.2d 617 (Pa. 2002), we concluded that Dodge raised a substantial question, because his aggregate sentence's length "under the Sentencing Code . . . was so manifestly excessive as to constitute too severe a punishment." **Dodge**, **supra.** at 776 (**quoting Mouzon**, **supra.** at 624). However, the Supreme Court of Pennsylvania granted an allowance of appeal and summarily vacated our order, pursuant to **Commonwealth v. Wells**, 926 A.2d 957 (Pa. 2007) (vacating this Court's remand for resentencing on the grounds that the sentencing court had acted properly in fashioning the sentence). Therefore, **Dodge** has little to no precedential value.

And, even if we must follow **Dodge** as to what constitutes a substantial question, that case did not hold that the "[f]ailure to address all relevant sentencing criteria presents a substantial question." Greene's Brief at 12.

Thus, we conclude that Greene has failed to raise a substantial question on this basis, as well.[6]

Fifth, Greene proposes that "the manner in which a trial court exercised its discretion in balancing the factors and circumstances bearing on the sentence raises a substantial question for appellate review."  Greene's Brief at 13 (*citing Commonwealth v. Coulverson*, 34 A.3d 135, 143 (Pa. Super. 2011)).  But, like his citation to *Dodge* above, Greene has again employed a case that does not support his position.  *Coulverson* involved a sex-offender's appeal, and we found that he raised a substantial question, because the judge had failed "to offer specific reasons for the sentence that comport with the considerations required in section 9721(b)[7] . . . ."  *Coulverson* at 143.

_____

[6] Moreover, in light of the presumption that the Supreme Court of Pennsylvania announced in *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (holding that, as a matter of law, a sentencing court presumptively considered all of the presentence report's data, including mitigating factors), we think that finding a substantial question when trial judges do not expressly address each sentencing criteria from the bench, if, as here, they consult the presentence report, would be futile.  This Court would grant review only to find on the merits that *Devers* requires us to affirm the sentence, because, having read the presentence report, the trial judge considered and therefore addressed all of the matters therein, including the mitigating factors that Greene claims she overlooked.  We see no reason to assert our discretionary appellate jurisdiction so impractically.

[7] 42 Pa.C.S.A. § 9721(b) provides, in relevant part, as follows:

> In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the

Thus, the **Coulverson** Court granted appellate review based upon that failure, which this Court, perhaps a bit unartfully, called "the manner" in which the trial court exercised its discretion. **Id.** Even so, we allowed that appeal, because the trial judge had provided **no** specific reasons for the sentence. Here, by contrast, the trial court provided ample reasons for sentencing Greene in the aggravated range. His disagreement with the reasons she cited does not create a substantial question.

In his sixth (and final) attempt to manufacture a substantial question, Greene tells us that any "sentence that is not 'individualized' . . . is antithetical to the Sentencing Code and raises a substantial question." **Id.** To support this theory, Greene's Brief cites again to **Coulverson**, at page 50.[8]

**Coulverson** considered whether the sentence was "individualized" while addressing the merits of the appellant's claim – in other words, *after* this Court had granted the allowance of appeal. **See Coulverson**, 34 A.3d at 150. Hence, it seems that, here too, Greene has tried to bootstrap his merit argument into his 2119(f) statement. Thus, his reliance upon whether his

_____

community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing and taking effect under section 2155 (relating to publication of guidelines for sentencing, resentencing and parole and recommitment ranges following revocation).

[8] We note that **Commonwealth v. Coulverson**, 34 A.3d 135, 143 (Pa. Super. 2011), starts on page 135 of the *Atlantic (Third) Reports*; thus, **Coulverson** says nothing at page 50. Therefore, his citation is of no avail. And, even assuming that this was a typo and Greene meant page 150 (the final page of **Coulverson**), that page does not discuss the issue of a substantial question.

sentence was "individualized" to establish a substantial question is misplaced. And we decline to make a new form of substantial question on this basis alone.

In sum, none of Greene's theories comported with our definition of a "substantial question." Essentially, he just thinks the trial court's sentence was incorrect. He never explained how his 7 to 14 years' imprisonment was either "(1) inconsistent with a specific provision of the Sentencing Code or (2) contrary to the fundamental norms which underlie the sentencing process." **Patterson**, 180 A.3d at 1232.

Thus, Greene has not demonstrated a substantial question relative to the discretionary aspects sentencing, and we deny his petition for allowance of appeal on that issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/18